John E. Cone, J.
Plaintiff seeks (1) a summary order pursuant to the provisions of section 964 of the Penal Law “ forever restraining and enjoining the Defendant * * * from using the name ‘ Original Green Stamp ’ ” in connection with its trading stamp business, (2) a summary order directing* and enjoining defendant “ to obliterate, delete and remove said name or any simulation thereof, in or about its business establishments, stationery, listings, telephone books, signs and advertisements,” and (3) for a temporary injunction under the general equity power of this court, to restrain certain allegedly injurious acts: (a) “from advertising or otherwise offering to exchange or redeem from exchanging or redeeming * * * and from in any other way dealing in or with the plaintiff’s trading stamps ’ ’; (b) “ from advertising or otherwise holding itself out to be the successor in interest to, or part of, or * * * connected with the plaintiff”; and (c) to prohibit defendant from “taking from the customers and/or licensees of the Plaintiff, Plaintiff’s banners, and/or other advertising devices and substituting their own in exactly the same form and shape ’ ’.
In support of its charge of “ unfair business practices ” made against defendant, plaintiff submits certain evidentiary facts which will be here set forth. Plaintiff has been in the green trading stamp business for the past 19 years with headquarters in Brooklyn and conducts a three-quarter million dollar business along the eastern seaboard of the United States. The defendant, Original Green Stamp Co. Inc., organized a few months ago in July, 1960 by several former employees, adopted the trade name 1 ‘ Original Green Stamps ’ ’ and under such name solicited plaintiff’s customer merchants in Queens and Nassau Counties. Plaintiff charges that defendant advertised that “ Current Stamp Savers Will Incur No Losses,” offered to the merchants and did exchange plaintiff’s green stamps for defendant’s green stamps, used a 5,000 stamp pad cover which almost *902 duplicated that used by the plaintiff as to size, lettering and content, and in various stores substituted defendant’s banners in place of plaintiff’s, both banners being alike in form, shape and color. Many of the merchant customers solicited by the defendant “were customers which defendant’s officers had brought into and/or had contracted with on behalf of the plaintiff herein, and for which these men were paid commissions.” That in brief constitutes the entire evidence submitted by plaintiff in support of the instant application. Matters of hearsay, as well as eonelusory statements, appearing in plaintiff’s application have not been considered by the court.
Plaintiff contends that the foregoing facts show an intention and design on the part of defendant to capitalize on the name and good will of the plaintiff, to deceive plaintiff’s merchant customers, and to mislead the consumer public by use of the word “ Original” in its trade and corporate name. However, plaintiff’s accusations are not supported by the evidence submitted.
The individuals who organized the defendant corporation had been at some time employed by plaintiff as salesmen or route men, either recently or as long ago as 1957. Their compensation consisted of commissions upon sales. No problem of confidential customer lists or trade secrets is involved. The defendant corporation was admittedly formed for the purpose of entering the trading stamp business in competition not only with the plaintiff and its three subsidiary companies, but with at least six other companies also engaged in the business of selling green stamps to merchants within the New York area.
The trading stamp business is essentially based upon sales by stamp companies printing and selling for a stipulated price gummed stamps, bearing a distinctive trade name, form and color, to merchant retailers. It is noted that the color green has been utilized in different shades. In return for the purchase of stamps by the merchant, the stamp company conducts an advertising campaign, intended to stimulate a cash trade, urging the general public to patronize those neighborhood stores which grant customers premium discounts in the form of trading-stamps in consideration of their cash purchases. The trading-stamps are then exchanged for articles of merchandise in stipulated amounts. The stamp company also advertises the variety of merchandise which it is prepared to exchange for the trading-stamps collected by the consumers.
The stamp company does not sell its stamps to more than one of a similar type of retailer in a stated competitive area or location. Otherwise the merchant’s competitive benefit to be *903 derived from purchasing and distributing the stamps would thereby be destroyed. In this connection the court notes that plaintiff "inferentially admits the defendant’s charge that through its own subsidiary companies plaintiff sells stamps to merchant customers found to be in close proximity to plaintiff’s customers who distribute plaintiff’s stamps and that the subsidiary companies’ green stamps would carry the same convertible value as plaintiff’s stamps, exchangeable for the same merchandise offered by the plaintiff and obtainable for the same number of trading stamps, and, furthermore, plaintiff’s stamps would be exchanged or traded in at face value by the subsidiary companies.
Defendant states unequivocably, and the statement has not been controverted, that none of plaintiff’s customers is bound by contract to purchase plaintiff’s stamps. Consequently, defendant takes the position that it may and does solicit any merchant, solely upon a competitive basis by offering them a better bargain.
Defendant admits that it agrees to and does redeem or exchange, through the merchants, plaintiff’s trading stamps which the merchants had previously distributed to their known customers on an equal parity with its own stamps. Defendant charges that this form of competition is a common practice with all stamp companies, including plaintiff. Defendant states that the exchange of trading stamps, under the conditions related herein, is considered a “ trade-in ” allowance to a merchant who agrees thenceforth to purchase the defendant’s trading stamps.
By way of illustrating plaintiff’s similar competitive practices, defendant makes a countercharge that the plaintiff displaced defendant with a new merchant account. No trading stamps had theretofore been used by the merchant. The plaintiff replaced defendant’s stamps and banners with the stamps and banners of one of plaintiff’s subsidiary companies.
Defendant does not deny that among the merchants solicited are included plaintiff’s customers, but asserts a right as competitor to solicit any merchant and offer the merchant better premium discounts to be used by the merchant as an advertising inducement to consumers. Defendant claims it offers consumers a greater assortment of merchandise and that generally such merchandise may be obtained by the consumer upon the surrender of a lesser number of stamp-saver booklets. One thousand four hundred forty stamps are required to fill plaintiff’s booklets, while defendant’s booklets require 1,500 stamps. The booklets reflect cash purchases of $144 and $150, respectively.
*904 While the court rejects plaintiff’s attorney’s affidavit as a reply affidavit, since obviously no factual matter is therein contained, it has nevertheless treated the affidavit as a memorandum of law, though concededly improper in form.
As regards plaintiff’s summary application under section 964, it has not been demonstrated by the submission of sufficient direct evidence that the inclusion of the word “ Original” in both defendant’s trade and corporate names, though the corporation is of recent origin, has or will deceive either the consuming public, comprising the retailer’s customers, or the retailers themselves. By statutory requirement the proof necessary to sustain an application under section 964 ‘ ‘ should be clear and convincing that the statute is or may be violated or that the public is in present danger of harm through deception.” (Matter of Agash Refining Corp. v. Gash, 182 Misc. 309, 311.) It does not appear that the defendant “ adopted its name for the purpose of capitalizing on [plaintiff’s] good will or with the intent of deceiving the public into believing that in doing business with [defendant] they were dealing with ’ ’ plaintiff. (Hylan Homes v. Hylan Terrace, 11 A D 2d 1047 [2d Dept.].)
Plaintiff’s conclusory statement that defendant adopted “ the name original green stamps as their trade name, with full knowledge of the fact that the Plaintiff herein goes under the trade name of Consumers Green Stamps * * * would con-notate that the Defendant was truthfully the first Green Stamp Trading Corporation ” does not provide the proof demanded by the statute ‘ ‘ that an ‘ intent to deceive ’ the public must exist before an injunction may issue, and such intent must be established without any substantial controversy of fact ” (Matter of Heimowitz v. Steri-Clean Co., 11 Misc 2d 919, 922). It has not been shown that the consuming public when making purchases would expect to receive plaintiff’s green stamps rather than the trading stamps issued by other stamp companies. (Matter of Murray v. Roedel, 196 Misc. 233.)
Regarding the advertising signs supplied by defendant to its merchant customers, which plaintiff finds objectionable as being deceitful and misleading to the customer public, it has not been sufficiently demonstrated that the merchants’ patrons fail to understand that the message, “ In the future we will issue only our new stamps,” (emphasis supplied) is being directed to them by the merchant, and not by the defendant stamp company.
Coming now to the plaintiff’s application for a temporary injunction under the general equity powers, the court finds (1) that insufficient evidence has been presented to sustain the charge that the defendant has held itself out to be plaintiff’s *905 successor and (2) that evidence has been submitted by the defendant, pertaining to defendant’s activities in connection with plaintiff’s stamps and advertising materials, in justification thereof, thereby presenting material issues which bar the granting of a temporary injunction. (Geed v. Braunsdorf, 277 App. Div. 1001.)
Plaintiff alleges that defendant wrongfully interferes with the contractual relationship existing between the plaintiff and its merchant customers who purchase its stamps. To sustain such theory of wrongful intent, four elements must be present: (1) a specific valid contract for a definite time; (2) defendant’s knowledge of that contract; (3) a malicious inducement by the defendant of one of the parties to the contract to breach the contract and the breach thereof; (4) damages. (Israel v. Wood Poison Co., 1 N Y 2d 116, 120; Hornstein v. Podwits, 254 N. Y. 443, 448; Lamb v. Cheney & Son, 227 N. Y. 418, 421; Neville v. Waring, 19 Misc 2d 736, 737.) The defendant, however, may show that its course of conduct was justified under the circumstances and that such justification is one which is recognized by law as a defense. (Advance Music Corp. v. American Tobacco Co., 296 N. Y. 79.85.)
The charge has been made that defendant deals in plaintiff’s stamps and that such conduct is wrongful. However, it appears that defendant’s conduct with plaintiff’s stamps is limited to the single step of honoring through the merchants unused stamps remaining in the possession of the merchant’s known customers. This practice, it is explained, is indulged in by competing stamp companies in order that the merchant might retain the good will of its regular customers.
There is no clear showing that defendant’s actions were motivated solely to harm plaintiff’s good will rather than for the competitive purpose of promoting defendant’s business interests. The case cited by plaintiff, Sperry & Hutchinson Co. v. Fenster (219 F. 755) does not label such actions as defendant has engaged in as constituting unfair business competition; the case does hold however that it was unfair competition to obtain a competitor’s stamps “under conditions equivalent to a purchase from the subscribers for these stamps, and are giving them to their own customers, and advertising so to do, as an inducement for trading ” (supra, p. 756).
The rule governing competitive practices in the trade-stamp business is no different than in any other competitive business. It was stated in Sperry & Hutchinson Co. v. Pommer (208 F. 804, 811) that “ There may be free and untrammeled competí *906 tion in this business, as in others, so long as there is no fraud practiced and no unfair competition and no unlawful interference with valid contracts.”
By virtue of defendant’s actions in inducing customers to sever their business relations with plaintiff, by offering them a better bargain than they have with plaintiff, as claimed by defendant, there is at least presented for determination upon a trial defendant’s right or privilege as a competitor to adopt such course of dealing (Restatement, Torts, vol. 4, § 766, Comment h, §§ 767, 768). Whether defendant is privileged to cause plaintiff harm by interfering in the above manner with plaintiff’s customers must be “ determined in the light of all the factors present.” (Restatement, supra, § 767, Comment on Clause [a], subd. b, p. 64.)
Before concluding the court wishes to make momentary reference to the breach of contract which was allegedly induced by the defendant. Plaintiff alleges in its complaint that defendant, “having knowledge of existing licenses and/or contracts between Plaintiff and its licensees are intentionally * * * and without justification * * * inducing Plaintiff’s licensees to breach their contracts with the Plaintiff.” However the court has not been made aware of the existence of any breach of contract occasioned by any of plaintiff’s licensees. The specifies of the alleged breach have not been set forth. No contractual duty has been shown to exist that plaintiff’s licensees were obliged to continue to purchase plaintiff’s stamps.
Should the relationship between plaintiff and its customers be determined as being at will, then it would be incumbent upon plaintiff in order to obtain relief herein, to demonstrate that the means employed by defendant “were dishonest or unfair.” (Coleman & Morris v. Pisiotta, 279 App. Div. 656, 657.)
The plaintiff claims that the exchange by the merchants of plaintiff’s stamps for those of the defendant constitutes a breach of the plaintiff’s conditions governing the use of the stamps and that the defendant is legally answerable to the plaintiff for the said violation of the conditions regulating the manner in which the stamps are usable. That is a fact question which can only be resolved upon a trial.
Under the circumstances, the granting of the summary remedy provided by section 964 of the Penal Law would be unwarranted. The foregoing conclusion is without prejudice to plaintiff’s rights under the plenary action for an injunction and damages which has already been instituted. For the reasons stated, the summary application and the motion for a temporary injunction are denied.